Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
Robert J. Drexler, Jr. (SBN 119119)
Robert.Drexler@capstonelawyers.com
Molly Ann DeSario (SBN 230763)
Molly.DeSario@capstonelawyers.com
Jonathan Lee (SBN 267146)
Jonathan.Lee @capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 556-4811
Facsimile:    (310) 943-0396

Attorneys for Plaintiff Ishmael Perez

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISHMAEL PEREZ, individually, and on behalf of other members of the general public similarly situated,<br><br>        Plaintiff,<br><br>      vs.<br><br>CORE & MAIN LP, a Florida limited partnership; and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.:  5:20-cv-01821-MCS-KK<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     September 20, 2021<br>Time:    9:00 a.m.<br>Place:   Courtroom 7C |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 20, 2021 at 9:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 7C of the above-captioned court, located at 350 W. 1st Street, 7th Floor, Los Angeles, California 90012, the Honorable Mark C. Scarsi presiding, Plaintiff Ishmael Perez will, and hereby does, move this Court to:

1.      Preliminarily approve the settlement set forth in the Joint Stipulation of Class Action Settlement and Release, attached as Exhibit 1 to the Declaration of Raul Perez;

2.      Conditionally certify the proposed Settlement Class;

3.      Appoint Ishmael Perez as the representative for the Settlement Class;

4.      Appoint Capstone Law APC as Class Counsel;

5.      Approve distribution of the proposed Notice of Class Action Settlement to the Settlement Class;

6.      Appoint ILYM Group, Inc. as the Settlement Administrator; and

7.      Set a hearing date for final approval of the settlement.

This Motion is based upon:  (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in support of Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration of Raul Perez; (4) the Joint Stipulation of Class Action Settlement and Release; (5) the Notice of Class Action Settlement; (6) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (7) the records, pleadings, and papers filed in this action; and (8) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    Dated:  July 20, 2021                    Respectfully submitted,

2

3                                        By: /s/ Raul Perez
                                             Raul Perez
                                             Robert J. Drexler, Jr.
4                                            Molly Ann DeSario
                                             Jonathan Lee
5                                            **CAPSTONE LAW APC**

6                                            Attorney for Plaintiff Ishmael Perez

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   FACTS AND PROCEDURE ...................................................................3

      A.    Brief Overview of the Litigation and Settlement Negotiations ..........3

      B.    Plaintiff's Counsel Conducted a Thorough Investigation of the Factual
            and Legal Issues and Were Thus Able to Objectively Assess the
            Settlement's Reasonableness ...............................................................4

      C.    The Proposed Settlement Fully Resolves Plaintiff's Claims ..............5

            1.    Composition of the Settlement Class.........................................5

            2.    PAGA Settlement Class Members .............................................5

            3.    Settlement Consideration...........................................................6

            4.    Formula for Calculating Class Claims Payments from the Net
                  Settlement Fund.........................................................................6

            5.    Formula for Calculating PAGA Claim Payments from the Net
                  Settlement Fund.........................................................................7

            6.    Release by the Settlement Class.................................................7

            7.    Release by PAGA Members .......................................................8

III.  ARGUMENT ..........................................................................................8

      A.    Conditional Class Certification Is Appropriate for Settlement Purposes..........8

      B.    Plaintiff's Claims Present Predominant Questions of Law and Fact ................9

            1.    The Court Should Certify Plaintiff's Meal Period Claim...........9

            2.    The Court Should Certify Plaintiff's Rest Period Claim .........11

            3.    The Court Should Certify Plaintiff's Minimum Wages Claim..............12

            4.    The Court Should Certify Plaintiff's Business Expense
                  Reimbursement Claim .............................................................13

            5.    The Court Should Certify Plaintiff's Regular Rate Claim ......15

            6.    The Court Should Certify Plaintiff's Derivative Claims .........16

7.    Plaintiff Will Adequately Represent the Interests of the Proposed
Settlement Class ...........................................................................16

8.    Class Settlement Is Superior to Other Available Means of
Resolution ....................................................................................17

C.    The Proposed Class Notice Adequately Informs Class Members About
The Case And Proposed Settlement...................................................17

D.    The Proposed Class Action Settlement Should Receive Preliminary
Approval .........................................................................................19

E.    The Relief Provided by the Settlement is Fair and Reasonable......................20

1.    The Gross Settlement Amount is Within the Range of
Reasonableness.............................................................................21

2.    The Settlement Provides for an Equitable Method of Allocating
Relief to Class Members................................................................24

3.    The Court Should Preliminarily Approve the Negotiated
Attorneys' Fees and Costs.............................................................25

F.    There Are No Obvious Deficiencies with the Settlement or Preferential
Treatment to Certain Class Members.................................................27

G.    The Court Should Preliminarily Approve the Negotiated Class
Representative Enhancement Payment...............................................27

H.    The Consideration Provided for the PAGA Claim Is Fair and
Reasonable In Light of the Amount in Controversy Discounted by the
Risks of Continued Litigation..........................................................28

IV.    CONCLUSION..............................................................................................32

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

2

3

**FEDERAL CASES**

4  *Aguirre v. Genesis Logistics*, No. SACV 12-00687 JVS (ANx), 2013 WL

5      10936035 (C.D. Cal. Dec. 30, 2013) ................................................................31

6  *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513 (C.D. Cal. 2011) ................................9

7  *Amochaev v. Citigroup Global Markets, Inc.*

8      No. 05-1298 PJH (N.D. Cal. 2008)...................................................................28

9  *Badami v. Grassroots Campaigns, Inc.*, Case No. C 07-03465 JSW (N.D.

10     Cal. Sept. 15, 2008)..........................................................................................25

11  *Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945. (N.D.

12     Cal. July 21, 2014) ...........................................................................................24

13  *Bernstein v. Virgin Am., Inc.*, 990 F.3d 1157 (9th Cir. 2021)...........................29

14  *Chen v. Morgan Stanley Smith Barney, LLC*, No. 8:14-CV-01077 ODW

15     (FFMx), 2014 WL 4961182 (C.D. Cal., October 2, 2014)...............................29

16  *Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP, 2011 WL 672645

17     (N.D. Cal Feb. 16, 2011) ..................................................................................31

18  *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ................20

19  *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016) ............................30

20  *Cruz v. Sky Chefs, Inc.*, No. 12-cv-02705-DMR, 2014 WL 7247065 (N.D.

21     Cal. Dec. 19, 2014) ..........................................................................................24

22  *Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC, 2016 WL 3549473

23     (E.D. Cal. June 29, 2016) .................................................................................31

24  *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625 (S.D. Cal. 2010)....................16

25  *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D.

26     Cal. May 14, 2007) ...........................................................................................25

27  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d

28     732 (1974)..........................................................................................................18

*Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPx) (OPX), 2011
   WL 7563047 (C.D. Cal. Aug. 12, 2011) ..........................................................30

*Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989) ................................................20

*Frlekin v. Apple, Inc.*, 2015 WL 6851424 (N.D. Cal. Nov. 7, 2015) ...............................13

*Garcia v. Gordon Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012
   WL 5364575 (E.D. Cal. Oct. 31, 2012) ............................................................31

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................16, 17, 20

*Hopkins v. Stryker Sales Corp.*, 2012 WL 1715091 (N.D. Cal. May 14,
   2012) ..................................................................................................14

*Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133
   (N.D. Cal. Apr. 3, 2009) ...........................................................................32

*Ibarra v. Wells Fargo Bank, N.A.*, No. CV 17-4344 PA (ASX), 2018 WL
   2146380 (C.D. Cal. 2018) ..........................................................................15

*In re Armored Car Antitrust Litig.,* 472 F. Supp. 1357 (N.D. Ga. 1979) .........................24

*In re AutoZone, Inc.*, 289 F.R.D. 526 (N.D. Cal. 2012) ..............................................9

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .....................27

*In re Four Seasons Secs. Laws Litig.,* 58 F.R.D. 19 (W.D. Okla.1972) .............................24

*In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y.
   2004) ..................................................................................................22

*In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa.
   2000) ..................................................................................................22

*In re LDK Solar Sec. Litig.*, No. 07-cv-05182-WHA, 2010 WL 3001384
   (N.D. Cal. July 29, 2010) ...........................................................................24

*In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp.
   2d 708 (E.D. Pa. 2014) .............................................................................20

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................24

*In re Tableware Antitrust Litig.,* 484. F. Supp. 2d 1078 (N.D. Cal. 2007).........................21

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*In re Taco Bell Wage & Hour Actions*, No. 07-01314-SAB, 2012 U.S. Dist. LEXIS 168219 (E.D. Cal. 2012) .........................................................................9

*In re Toys R Us-Delaware, Inc.-- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) ........................................23

*In re Uber FCRA Litig.*, No. 14-cv-05200-EMC, 2017 U.S. Dist. LEXIS 101552 (N.D. Cal. June 29, 2017)........................................................................24

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002) ..........................24

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 4010049 (N.D. Cal. July 26, 2016) ..........................27

*Kamar v. Radio Shack Corp.*, 254 F.R.D. 387 (C.D. Cal. 2008) ......................................8

*La Fleur v. Medical Management Intern, Inc.*, No. 13-00398-VAP, 2014 WL 2967475 (C.D. Cal. June 25, 2014) ................................................................27

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013) ..................................................9

*Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752 (N.D. Cal. June 15, 2012) ..........................................................31

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998).....................................21

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995).....................26

*McAtee v. Capital One, F.S.B.*, 479 F.3d 1143 (9th Cir. 2007)........................................26

*Montoya v. Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 WL 4142342 ((S.D. Cal. Aug. 4, 2016) .............................................................20

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004).............................................................................................21

*Newman v. Stein*, 464 F. 2d 689 (2d Cir. 1972)................................................................21

*O'Connor v. Uber Technologies, Inc.*, 311 F.R.D. 547, 2015 WL 8292006 (N.D. Cal. Dec. 9, 2015)..........................................................................14

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .....................21

*Rodriguez v. West Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009)............................................21

*Ruch v. AM Retail Group, Inc.*, 2016 WL 1161453 (N.D. Cal. Mar. 24, 2016)........................................................................................................21

*Schulz v. QualxServ, LLC*, 2012 WL 1439066 (S.D. Cal. Apr. 26, 2012).......................14

*Stevens v. Safeway, Inc.*
    2008 U.S. Dist. LEXIS 17119 (C.D. Cal. 2008)...............................................28

*Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765 (N.D. Cal. June 17, 2015) ........................................................24

*Stuart v. RadioShack*, 641 F. Supp. 2d 901 (N.D. Cal. 2009) ...........................................14

*Studley v. Alliance Healthcare Servs., Inc.*, 2012 WL 12286522 (C.D. Cal. July 26, 2012) ................................................................................................15

*Trang v. Turbine Engine Components Technologies Corp.*, No. CV 12–07658 DDP (RZx), 2012 WL 6618854 (C.D. Cal. Dec. 19, 2012) ..............................29

*Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759 (N.D. Cal. Oct. 11, 2016) ........................................................24

*Vieyara-Flores v. Sika Corp.*, No. EDCV19606JVSKKX, 2019 WL 2436998 (C.D. Cal. June 10, 2019)........................................................29

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)...............................................26

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350, 131 S. Ct. 2541 (2011) ...................9

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010)...............................17

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001)................................8

**STATE CASES**

*Acree v. General Motors Acceptance Corp.*, 92 Cal. App. 4th 385 (2001) ....................11

*Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157 (2008)........................................30

*Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016)......................................12

*Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012) ...............................................10

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) ...........................................30

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008)..........................................................26

*Cicairos v. Summit Logistics*, Inc., 133 Cal. App. 4th 949 (2005)......................................10

*Elder v. Schwan Food Co.*, No. B223911, 2011 WL 1797254 (Cal. Ct.

   App. May 12, 2011)....................................................................30

*Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554 (2007) .......................................14

*Huntington Mem. Hosp. v. Sup. Ct.*, 131 Cal. App. 4th 893 (2005) ...................................15

*Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480 (2016) ...............................................26

*Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19 (2000)......................................26

*Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000) ........................................12

*Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094 (2007)....................................10

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576  (2010) .........................................32

*Sav-On  Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319 (2004) .......................................10

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) .......................................................26

*Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112 (2012)..............................30

**FEDERAL STATUTES**

29 C.F.R. § 778.108.............................................................................15

Fed. R. Civ. P. 23.............................................................................17

Fed. R. Civ. P. 23(a) .......................................................................8, 16

Fed. R. Civ. P. 23(a)(2) ......................................................................9

Fed. R. Civ. P. 23(a)(4) .....................................................................16

Fed. R. Civ. P. 23(b) .........................................................................8

Fed. R. Civ. P. 23(b)(3) ....................................................................8, 9

Fed. R. Civ. P. 23(c)(2) .................................................................. 17, 18

Fed. R. Civ. P. 23(e)(1)(A)...................................................................19

**STATE STATUTES**

8 Cal. Code Regs. § 11070 subd. 2(g) ..........................................................13

Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Unfair Comp. Law (UCL)).............................16

Cal. Lab. Code § 201 ..................................................................................16

Cal. Lab. Code § 202 ..................................................................................16

Cal. Lab. Code § 203 ..................................................................................16

Cal. Lab. Code § 204 ..................................................................................16

Cal. Lab. Code § 226 ..................................................................................16

Cal. Lab. Code § 226.7(b) ..................................................................... 10, 11

Cal. Lab. Code § 226.7(c) ............................................................................15

Cal. Lab. Code § 510 ..................................................................................13

Cal. Lab. Code § 512(a) ................................................................................9

Cal. Lab. Code § 1194 ........................................................................... 13, 16

Cal. Lab. Code § 1197 ........................................................................... 13, 16

Cal. Lab. Code § 1197.1 ......................................................................... 13, 16

Cal. Lab. Code § 1198 ........................................................................... 13, 16

Cal. Lab. Code §§ 2698 *et seq.* (Priv. Attys. Gen. Act (PAGA)).......................30

SECONDARY AUTHORITIES

3 Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002).......................20

4 *William B. Rubenstein et al.*, *Newberg on Class Actions* § 11:38 (4th ed. 2008)........................................................................................................28

Manual for Complex Litigation (4th ed. 2004)............................................ 18, 19

*Manual for Complex Litigation*, Third (Fed. Judicial Center 1995)..................18

Tashima & Wagstaffe, Rutter Group Practice Guide: Federal Civil Procedure Before Trial, California & 9th Cir. Editions (The Rutter Group, 2015) ..................................................................................................26

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements:  An Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, March 2004..............................................................................26

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Ishmael Perez ("Plaintiff") seeks preliminary approval of the Joint Stipulation of Class Action Settlement and Release,[1] which if approved, would provide considerable monetary relief for approximately 400 current and former employees of Defendant Core & Main LP ("Defendant" or "C&M") (collectively with Plaintiff, the "Parties"). The principal terms of the Settlement provide for the following:

(1)    Conditional certification of a Settlement Class defined as:  All persons employed by Defendant in the State of California in non-exempt positions at any time from June 30, 2016 through date of Preliminary Approval ("Class Members").

(2)    A **non-reversionary** Gross Settlement Amount of $550,000. The Gross Settlement Amount includes:

(a)    A Net Settlement Fund of $326,667 (the Gross Settlement Amount minus the requested Attorneys' Fees and Costs, Settlement Administration Costs, the PAGA Settlement Amount, and the Class Representative Enhancement Payment), which will be allocated to all Class Members on a pro-rata basis according to the number of weeks each Class Member worked during the Class Period. **The Entire Net Settlement Fund will be paid to all Class Members who do not opt out of the Settlement Class, and without the need to submit claims for payment.**

(b)    Attorneys' fees in the amount of one-third of the Gross Settlement Amount (or $183,333), and litigation costs and expenses not to exceed $15,000, to Capstone Law APC ("Plaintiff's Counsel").

---

[1] Hereinafter "Settlement Agreement" or "Settlement."  Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

(c)  Settlement administration costs of approximately $10,000, to be paid to the jointly selected Settlement Administrator, ILYM Group, Inc.

(d)  A $10,000 PAGA settlement, of which 75% ($7,500) will be paid to the Labor & Workforce Development Agency ("LWDA"), and the remaining 25% ($2,500) ("PAGA Fund"), will be payable to PAGA Members, defined as: All persons employed by Defendant in the State of California in non-exempt positions during the PAGA Period. **The Entire PAGA Fund will be paid to all PAGA Members, and without the need to submit claims for payment.**

(e)  A Class Representative Enhancement Payment of $5,000 to Ishmael Perez for his service on behalf of the Settlement Class, the risks he took in bringing the action on behalf of the class, and for a general release of all claims arising out of his employment with Defendant.

An objective evaluation of the Settlement confirms that the relief negotiated on the Settlement Class' behalf is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from the Hon. Michael D. Marcus (Ret.), an experienced and well-respected class action mediator, and the Settlement confers substantial benefits to Class Members. This relief—averaging approximately $815 per Class Member from the Net Settlement Fund—is particularly significant when it is considered that nearly half of all Class Members signed arbitration agreements. Moreover, by settling now rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at trial, or of Plaintiff prevailing at trial but losing on appeal.

As discussed below, the proposed Settlement satisfies all criteria for preliminary settlement approval under California law and falls within the range of reasonableness.

Accordingly, Plaintiff respectfully requests that this Court grant preliminary approval of the Settlement Agreement.

## II.    FACTS AND PROCEDURE

### A.    Brief Overview of the Litigation and Settlement Negotiations

C&M is a Florida limited partnership with its headquarters in St. Louis, Missouri. It is a leading distributor of water, sewer, storm drain, and fire protection products in the United States. It operates at least 22 warehouse stores in California and, according to its removal papers, makes strategic decisions regarding operations management, human resources, corporate policy and compliance from its corporate headquarters in St. Louis, Missouri, for all non-exempt, hourly paid employees working for C&M in California, including Mr. Perez and class members.

Plaintiff filed his initial Complaint in the Superior Court of California for the County of San Bernardino on June 30, 2020. (Declaration of Raul Perez ["Perez Decl."] ¶ 2.) C&M subsequently removed the action on September 3, 2020. (*Id.*) In March of this year, the Parties decided to attend early mediation. (*Id.*) Accordingly, on March 29, 2021, the Parties participated in full-day mediation with Judge Marcus, an experienced mediator of wage and hour class actions. (*Id.*)

Judge Marcus helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides, and helped to narrow the gap between the Parties' respective positions. (*Id.* at ¶ 3.) With Judge Marcus's guidance, the Parties were eventually able to negotiate a complete settlement of Plaintiff's claims. (*Id.*) The terms of the settlement are now set forth in complete and final form in the Joint Stipulation of Class Action Settlement and Release. (*Id.*, Ex. 1.)

At all times, the Parties' negotiations were adversarial and non-collusive. (*Id.* at ¶ 4.) The Settlement therefore constitutes a fair, adequate, and reasonable compromise of the claims at issue. (*Id.*)

**B.** **Plaintiff's Counsel Conducted a Thorough Investigation of the Factual and Legal Issues and Were Thus Able to Objectively Assess the Settlement's Reasonableness**

Plaintiff's Counsel conducted a thorough investigation into the factual and legal issues implicated by Plaintiff's claims, and were able to objectively assess the settlement's reasonableness. For example, prior to filing the action, Plaintiff contacted Plaintiff's Counsel to discuss the factual bases for pursuing an action against Defendant for Labor Code violations. Plaintiff was intimately familiar with Defendant's labor policies and practices, and over the course of multiple interviews, knowledgeably summarized those policies and practices to Plaintiff's Counsel. During those conversations, he explained how the policies and practices were instituted and provided valuable insight into how they gave rise to the alleged Labor Code violations. Based on these interviews with Plaintiff, Plaintiff's Counsel determined that there were legally sufficient grounds for pursuing an action against Defendant. (Perez Decl. ¶ 5.)

Plaintiff's Counsel also prepared a detailed letter (15 pages, single-spaced) to notify the LWDA of Plaintiff's intent to seek civil penalties and other available relief recoverable under PAGA for Labor Code violations.  Significant research and effort were expended to prepare a PAGA notice that was consistent with the developing legal requirements so as to withstand any challenge from Defendant regarding the notice's sufficiency.  (Perez Decl. ¶ 6.)

Following the filing of the Complaint, and in response to Plaintiff's discovery requests, Plaintiff's Counsel received a considerable amount of documents and data, including employee demographic data, a 30% sample of Class Members' electronic time and payroll records, and over 400 pages of Defendant's labor policies and procedures manuals which covered a broad range of topics including, *inter alia*, employee clock-in policies and procedures, attendance policies, meal periods/rest periods, overtime & premium pay, etc. The document and data exchanges allowed Plaintiff's Counsel to fully assess the nature and magnitude of the claims being settled, as well as the impediments

1  to recovery, and ultimately enabled Plaintiff's Counsel so as to make an independent

2  assessment of the reasonableness of the settlement's terms. (Perez Decl. ¶ 7.)

3        In summary, Plaintiff's Counsel performed a thorough investigation into the

4  claims at issue, which included:  (1) determining Plaintiff's suitability as a private

5  attorney general and class representative through interviews, background investigations,

6  and analyses of his employment files and related records; (2) evaluating all of Plaintiff's

7  potential representative claims; (3) researching similar wage and hour class actions as to

8  the claims brought, the nature of the positions, and the type of employer; (4) analyzing a

9  sample of employees' time  and wage records; (5) reviewing Defendant's employment

10 policies and practices; (6) researching settlements in similar cases; (7) evaluating

11 Plaintiff's claims and estimating Defendant's liability for purposes of settlement;

12 (8) drafting the mediation brief; and (9) participating in the mediation. (Perez Decl. ¶ 8.)

13       By engaging in such a thorough investigation and evaluation of Plaintiff's claims,

14 Plaintiff's Counsel can opine that the Settlement, for the consideration and on the terms

15 set forth in the Settlement Agreement, is fair, reasonable, an adequate, and is in the best

16 interests of Class Members in light of all known facts and circumstances, including the

17 risk of significant delay and uncertainty associated with litigation, and various defenses

18 asserted by Defendant. (Perez Decl. ¶ 9.)

19       **C.    The Proposed Settlement Fully Resolves Plaintiff's Claims**

20             **1.    Composition of the Settlement Class**

21       The proposed Settlement Class consists of all persons employed by Defendant in

22 the State of California in non-exempt positions at any time from June 30, 2016 through

23 date of Preliminary Approval. (Settlement Agreement ¶ 5.) There are approximately 400

24 Class Members.  (*Id.* at ¶ 29.)

25             **2.    PAGA Settlement Class Members**

26       The $10,000 PAGA settlement will be distributed to the LWDA and all PAGA

27 Members, defined as: All persons employed by Defendant in the State of California in

28 non-exempt positions during the PAGA Period. (Settlement Agreement ¶ 17.)

### 3.   Settlement Consideration

Plaintiff and Defendant have agreed to settle the underlying class claims in exchange for the Gross Settlement Amount of $550,000. The Gross Settlement Amount includes:  (1) automatic payments to all Participating Class Members—meaning, all Class Members except those who submit timely and valid Requests for Exclusion—from the Net Settlement Fund; (2) $183,333 in attorneys' fees (i.e., one-third of the common fund) and up to $15,000 in litigation costs to Plaintiff's Counsel; (3) Settlement Administration Costs of approximately $10,000; (4) a $7,500 payment to the LWDA and a $2,500 payment to PAGA Members; and (5) a Class Representative Enhancement Payment of $5,000 for Plaintiff's service on behalf of the Settlement Class, the risks he took in bringing his representative claims, and for a release of all claims arising out of his employment with Defendant. (Settlement Agreement ¶¶ 32-36.)

Subject to the Court approving Attorneys' Fees and Costs, Settlement Administration Costs, the PAGA Settlement Amount, and the Class Representative Enhancement Payment, the Net Settlement Fund will be distributed to Participating Class Members in full. (Settlement Agreement ¶ 38.)

### 4.   Formula for Calculating Class Claims Payments from the Net Settlement Fund

Defendant will calculate the total number of Workweeks worked by each Class Member during the Class Period and the aggregate total number of Workweeks worked by all Class Members during the Class Period. To determine each Participating Class Member's share of the Net Settlement Fund, the Settlement Administrator will use the following formula:

- The Net Settlement Fund will be divided by the aggregate total number of Workweeks, resulting in the "Workweek Value."
- Each Participating Class Member's "Individual Settlement Payment" will be calculated by multiplying each individual Participating Class Member's total number of Workweeks by the Workweek Value.

- The Individual Settlement Payment will be reduced by any required deductions for each Participating Class Member as specifically set forth herein, including employee-side tax withholdings or deductions.
- The entire Net Settlement Fund will be disbursed to all Participating Class Members.

(Settlement Agreement ¶ 40(a).)

### 5.    Formula for Calculating PAGA Claim Payments from the Net Settlement Fund

Defendant will calculate the total number of Workweeks worked by each PAGA Member during the PAGA Period and the aggregate total number of Workweeks worked by all PAGA Members during the PAGA Period. To determine each PAGA Member's share of the PAGA Fund, the Settlement Administrator will use the following formula:

- The PAGA Fund will be divided by the aggregate total number of Workweeks, resulting in the "PAGA Workweek Value."
- Each PAGA Member's "Individual Settlement Payment" will be calculated by multiplying each individual PAGA Member's total number of Workweeks by the PAGA Workweek Value.
- The entire PAGA Fund will be disbursed to all PAGA Members.

(Settlement Agreement ¶ 40(b).)

### 6.    Release by the Settlement Class

In exchange for the Gross Settlement Amount, Plaintiff and Participating Class Members will agree to release the Released Class Claims during the Class Period:

All claims, rights, demands, liabilities, and causes of action accruing during the Class Period that were or could have been pleaded based on the factual allegations set forth in the operative Complaint, including: (i) all claims for unpaid overtime; (ii) all claims for meal and rest break violations; (iii) all claims for unpaid minimum wages; (iv) all claims for the failure to timely pay wages upon termination based on the preceding claims; (v) all claims for the failure to timely pay wages during employment; (vi) all claims for the failure to reimburse for necessary business expenses; (vii) all claims for wage statement violations; and (viii) all claims asserted through California

Business & Professions Code §§ 17200, et seq., based on the preceding claims.

(Settlement Agreement ¶¶ 24, 52.)

### 7.    Release by PAGA Members

In exchange for the PAGA Settlement Amount, Plaintiff and PAGA Members will agree to release the Released PAGA Claims during the PAGA Period:

> All claims, rights, demands, liabilities, and causes of action for PAGA civil penalties accruing during the PAGA Period that were or could have been pleaded based on the factual allegations set forth in the operative Complaint and any PAGA Letters submitted to the LWDA by Plaintiff, including: (i) all claims for unpaid overtime; (ii) all claims for meal and rest break violations; (iii) all claims for unpaid minimum wages; (iv) all claims for failure to timely pay wages upon termination based on the preceding claims; (v) all claims for the failure to timely pay wages during employment; (vi) all claims for the failure to reimburse for necessary business expenses; and (vii) all claims for wage statement violations.

(Settlement Agreement ¶¶ 25, 53.)

## III.    ARGUMENT

### A.    Conditional Class Certification Is Appropriate for Settlement Purposes

The parties seek conditional certification of the Settlement Class. A party seeking to certify a class must demonstrate that it has met all four requirements under Federal Rule of Civil Procedure 23(a),[2] and at least one of the requirements of Rule 23(b)—in this case, Rule 23(b)(3). *See Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Where, as here, workplace violations are at issue, "the key question for class certification is whether there is a consistent employer practice [or policy] that could be a basis for consistent liability." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008). Class certification is proper when the plaintiff provides substantial evidence

---

[2] Rule 23(a) provides that, to certify a class, Plaintiffs must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

of a company-wide policy on which her theory of liability is based, even if in practice that policy's implementation varied. *See In re Taco Bell Wage & Hour Actions*, No. 07-01314-SAB, 2012 U.S. Dist. LEXIS 168219, at *19 (E.D. Cal. Nov. 27, 2012) (certifying meal period class where uniform policy was undisputed but defendant argued "as a matter of practice, the policy is carried out in a variety of ways") (*adopted in full*, 2013 U.S. Dist. LEXIS 380 (E.D. Cal. Jan. 2, 2013)).

Moreover, "it is the plaintiff's theory that matters at the class certification stage, not whether the theory will ultimately succeed on the merits." *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 525 (C.D. Cal. 2011) (citations omitted). Rule 23's commonality analysis depends on whether a "basic theory of the [plaintiffs'] case" "can be proved on a classwide basis." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359, 131 S. Ct. 2541 (2011).  However, the fact that class members may have been affected by a defendant's uniform policies/practices to varying degrees or have suffered varying damages *is not a bar* to certification. *See Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 514 (9th. Cir. 2013) ("the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).").

## B.    Plaintiff's Claims Present Predominant Questions of Law and Fact

For a class to be certified, there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Rule 23(b)(3) also requires that the common questions of law or fact predominate over any individual questions. Thus, the Rule 23(a)(2) commonality inquiry and the Rule 23(b)(3) predominance inquiry overlap. *See In re Autozone, Inc.*, 289 F.R.D. 526, 533 n.10 (N.D. Cal. 2012).  Here, for purposes of a class action settlement, each of Plaintiff's theories of liability presents common legal and factual questions that predominate over any individual issues.

### 1.    The Court Should Certify Plaintiff's Meal Period Claim

"An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Cal. Lab. Code § 512(a). Additionally, an employee may not work more than

10 hours without being provided a second meal period. *Id.* Where an employee does not receive a timely meal period of at least 30 minutes, the employer is required to pay the employee one additional hour of pay at the employee's regular rate of compensation. Cal. Lab. Code § 226.7(b).

Plaintiff alleges that Class Members routinely had their meal periods delayed and/or interrupted due to periods of heavy workload that required employees to postpone taking their meal periods until after the fifth hour of work, and on occasion return to work during meal periods while off-the-clock. Plaintiff alleges that this was attributable to understaffing, which did not allow for sufficient break coverage.

It is well-settled that an employer is liable for failing to provide meal periods if the employer in any way discouraged employees from taking their required meal periods. As the California Supreme Court held in *Brinker Rest. Corp. v. Super. Ct.,* 53 Cal. 4th 1004, 1040 (2012):

> An employer's duty with respect to meal breaks under both section 512, subdivision (a) and Wage Order No. [7] is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and **does not impede or discourage them from doing so.**

(emphasis added); *see also Cicairos v. Summit Logistics*, Inc., 133 Cal. App. 4th 949, 962-63 (2005); *Murphy v. Kenneth Cole Prods., Inc*., 40 Cal. 4th 1094, 1104 (2007) ("An employee forced to forgo his or her meal period ... loses a benefit to which the law entitles him or her.")

Plaintiff contends that his meal period claim under this theory is readily certifiable. Even before *Brinker,* class certification rules were not as demanding as employers typically represent. "Predominance is a comparative concept,' and 'the necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate.' [Citations.]" *Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319, 334 (2004) ("*Sav-On*") (citation omitted). Thus, "[a] class action can be maintained even if each class member must at some point individually

show his or her eligibility for recovery or the amount of his or her damages, so long as each class member would not be required to litigate substantial and numerous factually unique questions to determine his or her individual right to recover." *Acree v. General Motors Acceptance Corp.*, 92 Cal. App. 4th 385, 397 (2001), fn. omitted.

Accordingly, Plaintiff contends that his meal period theory of liability yields the following predominant, common questions of fact and law:

- Did Defendant maintain and implement a uniform meal period policy that, *in practice*, did not provide meal periods?
- Did Defendant fail to pay premiums whenever it failed to provide meal periods?

Plaintiff maintains that common evidence—in the form of Defendant's written policies, corporate representative testimony, and class member declarations—would answer the predominant common questions and would show that the combined effect of Defendant's meal period policies was that it did not provide Class Members to take compliant breaks.

### 2.    The Court Should Certify Plaintiff's Rest Period Claim

The applicable IWC Wage Orders, an employer is required to authorize and permit all employees to take duty free rest periods at the rate of at least 10 minutes for every four hours worked or major fraction thereof. When an employer fails to provide an employee a paid rest period in accordance with the Wage Order, that employer shall pay the employee one hour of pay at the employee's regular rate of pay for each work day that the rest period is not provided. Cal. Lab. Code § 226.7(b).

Plaintiff alleges that Defendant unlawfully prohibits employees from leaving the worksite during their rest periods. Thus, Defendant allegedly violates the requirements of the Wage Orders and the Labor Code by not allowing employees to use their rest breaks for their own purposes because they are prohibited from leaving the premises during their rest breaks.

Recently the California Supreme confirmed that an employer is required to

relieve an employee of all duties during rest breaks. *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257 (2016) ("[D]uring rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time.") It is well established that an employer cannot require employees to remain on the premises during meal period. *See Bono Enterprises, In. v. Bradshaw*, 32 Cal. App. 4th 968 (1995). The Supreme Court has confirmed that the same is true for rest breaks:

> It would be difficult to cast aside section 226.7's parallel treatment of meal periods and rest periods and conclude that employers had completely distinct obligations when providing meal and rest periods. What makes sense instead is to infer that employers' responsibility are the same for meal and rest periods— an inference that also reflects the protective purpose of both. Augustus, slip op. at 9.

Indeed, the Supreme Court specifically found that on-duty rest periods in which the employer can require employees to remain on the premises is permitted "only in starkly limited circumstances." *Id.* at 12.

Plaintiff contends that common questions predominate as to Plaintiff's rest period claim because Defendant's rest period policy creates the following class-wide issues:

- Whether Defendant violates California law by failing to permit Class Members from leaving its premises during their rest periods;
- Whether Defendant's uniform written rest period policy violates California law by failing to give full effect to applicable Wage Order; and
- Whether Defendant was required to pay Class Members premium compensation for prohibiting them from leaving its premises during their rest periods.

Accordingly, the Court should find that common issues of fact and law predominate as to the rest period claim.

### 3. The Court Should Certify Plaintiff's Minimum Wages Claim

California law defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." *Morillion v. Royal Packing Co.*,

22 Cal. 4th 575, 578 (2000). Thus, "an employee who is subject to an employer's control does not have to be working during that time to be compensated[.]" *Id.* at 582; *see also* 8 Cal. Code Regs. § 11070 subd. 2(g) (defining "hours worked" as the "time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."). Requiring employees to work without compensation violates California's minimum wage and overtime laws. *See* Cal. Lab. Code §§ 510, 1194, 1197, 1197.1 and 1198. An employer is liable for off-the-clock "hours worked" if it "knew or should have known off-the-clock work was occurring." *Brinker*, 53 Cal. 4th at 1051-52.

Plaintiff alleges that he and other Class Members were required to undergo drug tests during their employment and without compensation, in violation of California law. The United States Department of Labor has weighed in on the issue and advises as follows:

> After being hired, employers often require their employees to take certain tests **as they begin employment**… such as … drug testing. Whenever you impose special tests, requirements or conditions that your employee must meet, time he or she spends traveling to and from the tests, waiting for and undergoing these tests, or meeting the requirements is probably hours worked.

The Department of Labor explains that "[t]ime spent in these activities is time during which the employee's freedom of movement is restricted for the purpose of serving your business and during which he or she is subject to your discretion and control."

Plaintiff contends that he has common evidence of Defendant's control over the Class Members during the testing processes. One court described this issue as dispositive. *Frlekin v. Apple, Inc.*, 2015 WL 6851424, *5-6 (N.D. Cal. Nov. 7, 2015) (explaining that, the courts in *Sullivan* and *Betancourt* "both explicitly described the interviews as required") (emphasis in original).

### 4. The Court Should Certify Plaintiff's Business Expense Reimbursement Claim

Plaintiff alleges that Defendant violated Labor Code section 2802 by failing to

reimburse employees for the cost of traveling to drug-testing facilities. Labor Code section 2802 provides that "an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties..." Section 2802 "is designed to prevent employers from passing their operating expenses on to their employees." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 562 (2007) (citing legislative history). Courts have recognized the "strong public policy... favor[ing] the indemnification... of employees..." *Stuart v. RadioShack,* 641 F. Supp. 2d 901, 903 (N.D. Cal. 2009) (quotation omitted).

Courts routinely certify reimbursement claims under Section 2802. *See*, *e.g.*, *Schulz v. QualxServ, LLC*, 2012 WL 1439066, *4-6 (S.D. Cal. Apr. 26, 2012) (commonality and predominance were met where plaintiffs challenged "uniform policies and systemic practices" and rejecting an argument that "the reimbursement claim involves an individualized inquiry into each technician's expenses") *Hopkins v. Stryker Sales Corp.,* 2012 WL 1715091, *5 (N.D. Cal. May 14, 2012) ("[d]istrict courts throughout this circuit have found that commonality is met when, as here, the proposed class of plaintiffs asserts that an employer adopted a policy of not reimbursing its employees' necessary business expenses in violation of Cal. Lab. Code section 2802."); *O'Connor v. Uber Technologies, In*c., 311 F.R.D. 547, 2015 WL 8292006, *17-18 (N.D. Cal. Dec. 9, 2015) (certifying a class of drivers pursuing a section 2802 claim for mileage and cell phone expenses).

Plaintiff contends that common questions predominate as to Plaintiff's business expense reimbursement claim because Defendant's rest period policy creates the following class-wide issues:

- Whether Defendant required all Class Members to undergo drug tests as a condition of employment?

- Whether Defendant required all Class Members to commute to drug test locations?

- Whether Defendant should have compensated Class Members for mileage

1 | to commute to drug testing locations?

2 | For the reasons discussed above, Plaintiff's business expense claim is suitable for

3 | class treatment.

### 5.    The Court Should Certify Plaintiff's Regular Rate Claim

Plaintiff alleges that Defendant calculated meal and rest period premiums at a "base rate" of pay rather than the "regular rate" as required by law. Specifically, Plaintiff alleges that Defendant did not factor in non-discretionary bonus compensation in the calculation of the regular rate. Under California law, if "an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law… the employer shall pay the employee one additional hour of pay ***at the employee's regular rate of compensation*** for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7(c) (emphasis added). District courts have pointed out the California Legislature uses the terms "regular rate of pay" and "regular rate of compensation" interchangeably and thus premiums must be paid at the regular rate not the hourly rate. *Studley v. Alliance Healthcare Servs., Inc.*, 2012 WL 12286522 (C.D. Cal. July 26, 2012); *Ibarra v. Wells Fargo Bank, N.A.*, No. CV 17-4344 PA (ASX), 2018 WL 2146380, at *3 (C.D. Cal. 2018) ("The Court concludes that the "regular rate of compensation" for class members is not limited to [employees] hourly rate but rather must include other forms of qualifying compensation….")

Other California authorities are consistent. The term of art "regular rate" is "the actual hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." 29 C.F.R. §778.108. California courts are in accord, having used the term "regular rate" to refer to an employee's regular rate of "compensation." *See e.g. Huntington Mem. Hosp. v. Sup. Ct.*, 131 Cal.App.4th 893, 902 and 905 (2005) (calculating an employee's "regular rate" "by dividing the total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked  in that workweek for which such compensation was paid.").

Plaintiff's regular rate theory of liability is amenable to class treatment because

common proof would establish Defendant's liability for maintaining a uniform policy and practice of failing to pay premiums at the regular rate of pay as required by law. And to the extent Defendant claims that it calculated the regular rate lawfully, and did include in the calculation shift differential pay, this itself raises a common question: How precisely did Defendant calculate the premiums? Thus, common questions of fact and law would predominate with respect to the adjudication of Plaintiff's regular rate theory of liability.

### 6.    The Court Should Certify Plaintiff's Derivative Claims

Plaintiff's complaint includes claims pursuant to Labor Code sections 226, 1198, 1194, 1197, 1197.1, 201, 202, 203 and 204 and California Business & Professions Code sections 17200, *et seq.*  These claims are derivative of Plaintiff's underlying claims for minimum wage violations and meal and rest period premiums. Thus, for the same reasons that the Court should conditionally certify the underlying claims, it should also certify these derivative claims. *See Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 640 (S.D. Cal. 2010).

### 7.    Plaintiff Will Adequately Represent the Interests of the Proposed Settlement Class

The final Rule 23(a) requirement asks whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied if: (1) the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) Plaintiffs are represented by qualified and competent counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

The Rule 23(a) adequacy requirement is met here as Plaintiff has and will represent putative Class Members with a focus and zeal true to the fiduciary obligation that  he has undertaken. Plaintiff's Counsel also satisfies the Rule 23(a)(4) adequacy-of-counsel requirement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"). The attorneys at Capstone have successfully certified numerous class

actions by way of contested motion in state and federal court, and have negotiated settlements totaling over 100 million dollars on behalf of hundreds of thousands of Class Members. (*See* Perez Decl. ¶¶ 53-61, Ex. 2.)

### 8.    Class Settlement Is Superior to Other Available Means of Resolution

Resolving all Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023.  Indeed, the terms of the Settlement negotiated on behalf of the Class demonstrates the advantages of a collective bargaining and resolution process.

Addressing the allegations through a class action is superior to individual litigation or any alternative methods that may exist. This action was filed precisely because Plaintiff believed those alternatives would have proven ineffective in addressing the problem on a class-wide basis. Additionally, although the value of the claims is not insignificant, the amount in controversy is not nearly enough to incentivize individual action. *See Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this [superiority] factor weighs in favor of class certification."). As the class action device provides the superior means to effectively and efficiently resolve this controversy, and as the other requirements of Rule 23 are each satisfied, certification of the Settlement Class proposed by the Parties is appropriate.

### C.    The Proposed Class Notice Adequately Informs Class Members About The Case And Proposed Settlement

The proposed class settlement notice and claims administration procedure satisfy due process. Rule 23(c)(2) of the Federal Rules of Civil Procedure requires the Court to direct the litigants to provide Class Members with the "best notice practicable" under the

circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173, 94 S. Ct. 2140, 2150, 40 L. Ed. 2d 732, 746 (1974). Under Rule 23(c)(2), notice by mail provides such "individual notice to all members." *Id.* Where the names and addresses of Class Members are easily ascertainable, individual notice through the mail constitutes the "best notice practicable." *Id.* at 175.

The Notice of Class Action Settlement ("Class Notice") was jointly drafted and approved by the Parties and provides Settlement Class Members with all required information so that each member may make an informed decision regarding his or her participation in the Settlement. The Class Notice provides information regarding the nature of the lawsuit; a summary of the substance of the settlement terms; the class definition; the deadlines by which Class Members must submit Request for Exclusions or objections; the date for the final approval hearing; the formula used to calculate settlement payments; a statement that the Court has preliminarily approved the settlement; a statement that Class Members will release the settled claims unless they opt out; and noticed of pending lawsuits with overlapping claims. Accordingly, the Notice satisfies the requirements of Rule 23(c)(2).

The Class Notice summarizes the proceedings and the terms and conditions of the Settlement in an informative and coherent manner, complying with the statement in *Manual for Complex Litigation*, *supra*, that "the notice should be accurate, objective, and understandable to Class Members . . . ." *Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) ("Manual") § 30.211.  The Notice Packet states that the Settlement does not constitute an admission of liability by Defendants, and that Final Approval has yet to be made. The Notice Packet thus complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. Rule 23(c)(2) and (e); *Manual* §§ 8.21, 8.39; 30.211, 30.212.

The Settlement Administrator will mail the Class Notice to all Settlement Class Members via first class United States mail. (Settlement Agreement ¶ 45.)  In the event

1    Notice Packets are returned as undeliverable, the Settlement Administrator will attempt

2    to locate a current address using, among other resources, a computer/SSN and "skip

3    trace" search to obtain an updated address. (*Id.* at ¶ 46.)  This method was negotiated by

4    the Parties to maximize the Class Member notification rate while ensuring cost effective

5    administration of the Settlement.

6         **D.      The Proposed Class Action Settlement Should Receive Preliminary**

7              **Approval**

8         Class action settlements must be approved by the court and notice of the

9    settlement must be provided to the class before the action can be dismissed. Fed. R. Civ.

10   P. 23(e)(1)(A). To protect absent class members' due process rights, approval of class

11   action settlements involves three steps:

12        1.    Preliminary approval of the proposed settlement;

13        2.    Notice to the class providing them an opportunity to exclude themselves;

14              and

15        3.    A final fairness hearing concerning the fairness, adequacy, and

16              reasonableness of the settlement.

17   *See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

18        F.R.C.P. 23(e) provides that if the proposal would bind class members, the Court

19   may approve it only after a hearing and only on finding that it is fair, reasonable, and

20   adequate after considering whether:

21        (A)   the class representatives and class counsel have adequately represented the

22   class;

23        (B)   the proposal was negotiated at arm's length;

24        (C)   the relief provided for the class is adequate, taking into account:

25              (i)    the costs, risks, and delay of trial and appeal;

26              (ii)   the effectiveness of any proposed method of distributing relief to the

27                     class, including the method of processing class-member claims;

28              (iii)  the terms of any proposed award of attorney's fees, including

1    timing of payment; and

2          (iv)    any agreement required to be identified under Rule 23(e)(3); and

3    (D)    the proposal treats class members equitably relative to each other.

4    The judicial policy favoring settlement of class action suits should guide the Court

5    in evaluating the fairness of a settlement. *See Churchill Village, LLC v. Gen. Elec.*, 361

6    F.3d 566, 576 (9th Cir. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d at 1027

7    (endorsing the trial court's "proper deference to the private consensual decision of the

8    parties" when approving a settlement). As this Circuit has observed, "settlements offer

9    parties and their counsel relief from the burdens and uncertainties inherent in trial. . . .

10    The economics of litigation are such that pre-trial settlement may be more advantageous

11    for both sides than expending the time and resources inevitably consumed in the trial

12    process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).

13          **E.    The Relief Provided by the Settlement is Fair and Reasonable**

14    At the preliminary approval stage, the Court evaluates whether the settlement is

15    within the "range of reasonableness," and whether notice to the class and the scheduling

16    of a final approval hearing should be ordered. *See generally* 3 Conte & Newberg,

17    *Newberg on Class Actions*, § 7.20 (4th ed. 2002). For preliminary approval, scrutiny of

18    the settlement is reduced. *In re Nat'l Football League Players' Concussion Injury Litig.*,

19    961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) ("At the preliminary approval stage, the bar to

20    meet the 'fair, reasonable and adequate' standard is lowered."); *see also, Montoya v.*

21    *Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 WL 4142342  (S.D. Cal. Aug. 4,

22    2016).

23    The Court need only review the parties' proposed settlement to determine

24    whether it is within the permissible "range of possible judicial approval" and thus,

25    whether the notice to the class and the scheduling of the formal fairness hearing is

26    appropriate. Newberg, § 11:25. Preliminary approval should be granted if "the proposed

27    settlement appears to be the product of serious, informed, non-collusive negotiations, has

28    no obvious deficiencies, does not improperly grant preferential treatment to class

1 representatives or segments of the class, and falls within the range of possible approval.

2 *Ruch v. AM Retail Group, Inc.*, 2016 WL 1161453, at \*7 (N.D. Cal. Mar. 24, 2016)

3 (quoting *In re Tableware Antitrust Litig.*, 484. F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

**1.    The Gross Settlement Amount is Within the Range of Reasonableness**

6      As discussed in detail below, an objective evaluation of the Settlement confirms

7 that the relief negotiated on the Class' behalf—a $550,000 non-reversionary total Gross

8 Settlement Amount—is fair, reasonable, and valuable. The Settlement was negotiated by

9 the Parties at arm's length with helpful guidance from Judge Marcus, and the Settlement

10 confers substantial benefits to Class Members. The relief offered by the Settlement is

11 particularly significant when viewed against the difficulties encountered by plaintiffs

12 pursuing wage and hour cases.

13      In determining whether a settlement agreement is fair, adequate, and reasonable

14 to all concerned, the Court may consider the strength of the plaintiff's case and the

15 amount offered in settlement, among other factors. *Linney v. Cellular Alaska P'ship*, 151

16 F.3d 1234, 1242 (9th Cir. 1998). Ultimately, "the district court's determination is

17 nothing more than an amalgam of delicate balancing, gross approximations, and rough

18 justice," and there is no single "formula" to be applied; rather, the Court may presume

19 that the parties' counsel and the mediator arrived at a reasonable range of settlement by

20 considering Plaintiff's likelihood of recovery. *Officers for Justice v. Civil Serv. Comm'n*,

21 688 F.2d 615, 625 (9th Cir. 1982); *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th

22 Cir. 2009).

23      Federal district courts recognize that there is an inherent "range of

24 reasonableness" in determining whether to approve a settlement "which recognizes the

25 uncertainties of law and fact in any particular case and the concomitant risks and costs

26 necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F. 2d

27 689, 693 (2d Cir. 1972); *see also Nat'l Rural Telecomm. Coop. v. Directv, Inc.*, 221

28 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be

acceptable even though it amounts to only a fraction of the potential recovery").[3]

| Defendant's Maximum Potential Exposure for the Class Claims | |
|---|---|
| Rest Period Claim[4] | $3,209,900.00 |
| Meal Period Claim[5] | $385,190.00 |
| Minimum Wage / Off-the-Clock[6] | $371,630.00 |
| Regular Rate[7] | $1,560.00 |
| Business Expense Reimbursement Claim[8] | $47,425.00 |
| Wage Statement Claim[9] | $759,550.00 |
| Final Pay Claim[10] | $570,525.00 |
| Total | **$5,345,780.00** |

This estimate assumes that each and every one of Plaintiff's claims would have been certified for class-wide resolution, that Plaintiff's would have prevailed at trial, and that the jury's verdict would have been affirmed on appeal. Understandably, for

---

[3] *See also In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) ("settlement amount's ratio to the maximum potential recovery need not be the sole, or even dominant, consideration when assessing settlement's fairness"); *In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather the percentage should be considered in light of strength of the claims").

[4] 140,600 rest period-eligible shifts during the Class Period × $22.83 average hourly wage = $3,209,898.

[5] 140,600 meal period-eligible shifts × 12% violation rate (15% violation rate reduced to 12% to account for payment of meal premiums paid) × $22.83 average hourly wage = $385,190.

[6] 16,278 hours of uncompensated time (i.e., conservatively estimating 0.5 hours of off-the-clock work per workweek, between the effects of Defendants' time shaving, and work while clocked out for meal periods, plus 2 hours of off-the-clock work per employee for off-the-clock drug tests) × $22.83 average hourly wage = $371,630.

[7] 156 occasions of regular rate violations (i.e., based on the expert analysis, estimating 2 occasions for 20% of the employees) and conservatively estimating a $10 average underpayment of overtime wages or meal period premium for failure to incorporate non-discretionary bonus payments into the regular rate of pay, on each occasion.

[8] $7.75 average expenses per month (i.e., prorated for $3 per month in debit card fees for 50% of employees, plus $5 per month in cell phone expenses for all employees, plus $50 average unreimbursed expenses for tools and protective equipment per employee, plus $35 in unreimbursed mileage expenses per employee for drug tests) × approximately 24,475 workweeks in the three-year expense reimbursement claim period (assuming 4 workweeks per month, at $7.75 average per month).

[9] 313 class members in the wage statement claims period × $50 for each initial violation + 7,439 remaining pay periods × $100 for each subsequent violation = $759,550 in section 226(e) penalties.

[10] 119 terminations × 7-hour average shift length (conservative estimate) × $22.83 average hourly wage × 30 days for waiting-time penalties = $570,522.

1   purposes of evaluating the settlement's reasonable, this estimate must be "tempered by

2   factors such as the risk of losing at trial, the expense of litigating the case, and the

3   expected delay in recovery (often measured in years)." *In re Toys R Us-Delaware, Inc.--*

4   *Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D.

5   Cal. 2014).

6       Ultimately, Plaintiff's Counsel determined an appropriate range of recovery for

7   settlement purposes by offsetting Defendant's maximum theoretical liability by:  (i) the

8   strength of the defenses to the merits of Plaintiff's claims; (ii) the risk of class

9   certification being denied; (iii) the risk of losing on any of a number of dispositive

10  motions that could have been brought between certification and trial (e.g., motions to

11  decertify the class, motions for summary judgment, and/or motions in limine) that might

12  have eliminated all or some of Plaintiff's claims, or barred evidence/testimony in support

13  of the claims; (iv) the risk of losing at trial; (v) the chances of a favorable verdict being

14  reversed on appeal; and (vi) the difficulties attendant to collecting on a judgment

15  (collectively, the "Discount Factors").

16      After taking into account the Discount Factors, Plaintiff's Counsel determined

17  that it would be reasonable to settle for a fraction of Defendant's maximum potential

18  exposure for the class claims (PAGA discussed in the following section), or

19  approximately 10%, which is essentially the product of the probability of:  (i)

20  certification being granted on **all claims** ($\approx$ 50%); (ii) prevailing on summary

21  judgment/motions in limine/renewed motions to deny certification on **all claims** ($\approx$

22  50%); (iii) prevailing at trial on **all of Plaintiff's claims** ($\approx$ 40%); i.e., 50% $\times$ 50% $\times$

23  40%.

24      Such a discount is inherently reasonable given that Plaintiff would have had to

25  overcome **multiple, dependent** contingencies to prevail on his claims. If anything, the

26  projected odds for each of the above contingencies is generous to the class' position,

27  since plaintiffs in employment cases rarely prevail on **all of the claims** at any of these

28  dispositive stages. Courts routinely approve settlements that provide a similar discounted

range of the maximum potential recovery. *See, e.g., In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 256-58 (D. Del. 2002) (recognizing that a reasonable settlement amount can be 1.6% to 14% of the total estimated damages); *In Re Armored Car Antitrust Litig.,* 472 F. Supp. 1357, 1373 (N.D. Ga. 1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *In Re Four Seasons Secs. Laws Litig.,* 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages); *Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (finding that settlement which amounted to 8% of maximum recovery "[fell] within the range of possible initial approval based on the strength of plaintiff's case and the risk and expense of continued litigation."); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement of 6% to 8% of estimated damages).[11]

## 2. The Settlement Provides for an Equitable Method of Allocating Relief to Class Members

The Settlement provides for an equitable method of allocating relief to Class Members in proportion to qualifying wage statements received. Formula for Calculating Settlement Payments

Each Class Member's settlement payment will be based on the number of

---

[11] *See also In re Uber FCRA Litig.*, No. 14-cv-05200-EMC, 2017 U.S. Dist. LEXIS 101552, at *23- 24 (N.D. Cal. June 29, 2017) (granting preliminary approval to class action settlement where gross settlement fund, prior to deducting attorneys' fees and services awards, was valued at 7.5% or less of total possible verdict); *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759, at *21 (N.D. Cal. Oct. 11, 2016) (granting preliminary approval to class action settlement representing "8.1% of the full verdict value" with net settlement amount representing approximately 5.3% of full verdict value); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval to settlement with net recovery to Plaintiffs valued at 7.3% of potential maximum recovery); *Cruz v. Sky Chefs, Inc.*, No. 12-cv-02705-DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) (granting final approval where gross settlement amount represented 8.6% of the maximum potential recovery from the class claims and estimated amount distributable to class after accounting for attorneys' fees and other deductions represented approximately 6.1% of maximum potential recovery); *In re LDK Solar Sec. Litig.*, No. 07-cv-05182-WHA, 2010 WL 3001384, at *2 (N.D. Cal. July 29, 2010) (granting final approving where "[t]he proposed settlement amount is [. . .] only about five percent of the estimated damages before fee and costs—even before any reduction thereof for attorney's fees and costs.").

Workweeks the Class Member worked in a non-exempt position during the period from June 30, 2016 to date of Preliminary Approval. Each Class Member's respective share of the Net Settlement Fund will be allocated on a pro-rata basis according to the number of Workweeks worked by each qualifying Class Member. Individual Settlement Payments will be reduced by any required deductions for each Participating Class Members as specifically set forth herein, including employee-side tax withholdings or deductions.

The average Individual Settlement Payment is approximately $815. This is in line with, if not higher than (since many of the wage and hour settlements below released many more claims), many wage and hour class action settlements approved by California state and federal courts. *See, e.g.*, *Badami v. Grassroots Campaigns, Inc.*, Case No. C 07-03465 JSW (N.D. Cal. Sept. 15, 2008) (average net recovery of approximately $195); *Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct.) (average net recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20).

### 3. The Court Should Preliminarily Approve the Negotiated Attorneys' Fees and Costs

At final approval, Class Counsel will request attorneys' fees in the amount of one-

third of the total common fund. Under controlling California law,[12] the common fund method for awarding attorneys' fees is appropriate where, as here, attorneys have been instrumental in creating a settlement fund that benefits all class members. *See Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977) (noting that federal and state courts have long recognized that when attorneys create a common fund that benefits a class, the attorneys have an equitable right to be compensated from that fund); *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 48 (2000) ("Courts agree that, because the percentage-of-the-benefit approach is 'results oriented rather than process-oriented, it better approximates the workings of the marketplace' than the lodestar approach." [citation omitted]). Although California has no benchmark, California courts routinely award attorneys' fees equalling approximately one-third of the common fund's total potential value or higher. *See*, *e.g.*, *Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480 (2016) (affirming a fee award representing one-third of the common fund); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("[S]tudies show that . . . fee awards in class actions average around one-third of the recovery."); Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class action litigation nationwide have come to a similar conclusion that a one-third fee is consistent with market rates).

Plaintiff will file a formal motion for the negotiated attorneys' fees and costs once preliminary approval of the Settlement is granted. To date, Plaintiff's Counsel have

---

[12] In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees. *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees"). The state law governing the underlying claims in a diversity action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Because CAFA operates to modify the diversity requirement, "the *Erie* doctrine still applies so that state substantive law governs such claims in federal court." *See* Tashima & Wagstaffe, Rutter Group Practice Guide: Federal Civil Procedure Before Trial, California & 9th Cir. Editions (The Rutter Group, 2015) paragraph 10:497.5. As the Ninth Circuit observed, "even after CAFA's enactment, *Erie*-related doctrines ensure that, for the most part, removal of a CAFA case from state to federal court produces a change of courtrooms and procedure rather than a change of substantive law." *McAtee v. Capital One, F.S.B.*, 479 F.3d 1143, 1147 (9th Cir. 2007).

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  incurred $211,256 in attorneys' fees and approximately $13,700 in costs and expenses.

2  (Perez Decl. ¶¶ 49-52.)

3  **F.      There Are No Obvious Deficiencies with the Settlement or**

4  **Preferential Treatment to Certain Class Members**

5  The Court must also ask whether "the Settlement contains any obvious

6  deficiencies" and "whether the Settlement provides preferential treatment to any Class

7  Member." *In re: Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,

8  No. 2672 CRB (JSC), 2016 WL 4010049, at **14, 16 (N.D. Cal. July 26, 2016). This

9  Settlement contains no "glaring deficiencies" *Id*. at *14. The Settlement does not provide

10  for a reversion of unpaid settlement funds to Defendants or distribute a disproportionate

11  share of the settlement to the attorneys that requires closer scrutiny in the Ninth Circuit.

12  *See id*. at *14-15 (applying the factors set forth in *In re Bluetooth Headset Prods. Liab.*

13  *Litig*., 654 F.3d 935, 946 (9th Cir. 2011)).

14  Moreover, no segment of the Class is given preferential treatment. Plaintiff will

15  also seek, at a later time (when the Motion for Attorneys' Fees is filed), an incentive

16  award in an amount that is well within the range of such awards in the Ninth Circuit for

17  his work on the behalf of the Class, the reputation risk undertaken, and for the execution

18  of a general release. *See infra*, § III.G. *See, e.g.*, *La Fleur v. Medical Management*

19  *Intern, Inc*., No. 13-00398-VAP, 2014 WL 2967475, *8 (C.D. Cal. June 25, 2014)

20  (awarding $15,000 to each named plaintiff for services to the Class, reputational harm

21  and general release). Accordingly, the Settlement is procedurally fair, adequate and

22  reasonable.

23  **G.      The Court Should Preliminarily Approve the Negotiated Class**

24  **Representative Enhancement Payment**

25  The Settlement provides for a Class Representative Enhancement Payment of

26  $5,000[13] to Plaintiff for his service on behalf of Class Members and for agreeing to a

27  _____

28  [13] The amount of the requested incentive award is also reasonable by reference to

broader release than those required of other Class Members. "Incentive awards are fairly typical in class action cases . . . Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class . . . ." *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 *William B. Rubenstein et al., Newberg on Class Actions* § 11:38 (4th ed. 2008)). These payments work both as an inducement to participate in the suit and as compensation for time spent in litigation activities. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (describing the service award as an incentive to the class representatives); *Matter of Continental Illinois Securities Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (stating that an enhancement award should be in such an amount "as may be necessary to induce [the class representative] to participate in the suit").

Plaintiff will file a formal motion for the negotiated Class Representative Enhancement Payment once preliminary approval of the Settlement is granted.

### H.    The Consideration Provided for the PAGA Claim Is Fair and Reasonable In Light of the Amount in Controversy Discounted by the Risks of Continued Litigation

Pursuant to the Settlement Agreement, $10,000 from the Gross Settlement Amount shall be allocated to the resolution of the PAGA claim, of which 75% ($7,500) will be paid directly to the LWDA, and the remaining 25% ($2,500) will be paid to PAGA Members.  (Settlement Agreement ¶ 36.)

---

the amounts that district courts in this Circuit have repeatedly found to be reasonable for wage and hour class action settlements. *See, e.g., Bernal v. Davita, Inc.*, Case No. 5:12-cv-03255-PSG, *2 (N.D. Cal, Jan. 14, 2014) ($10,000 incentive payment in $3.4 million wage-and-hour class settlement); *York v. Starbucks Corp.*, No. 08-07919 GAF, Dkt. No. 239, at *4 (C.D. Cal. Oct. 29, 2013) (approving enhancement award of $10,000 in a $3 million wage-and-hour class settlement); *Ross v. US Bank Nat'l Ass'n*, No. 07-02951-SI, 2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept. 29, 2010) (approving enhancement awards of $20,000 each to four class representatives in a $3.5 million settlement of an employment class action); *Stevens v. Safeway, Inc.*, No. 05-01988, 2008 U.S. Dist. LEXIS 17119, **34-37 (C.D. Cal. Feb. 25, 2008) ($20,000 and $10,000 award); *Amochaev v. Citigroup Global Markets, Inc.*, No. 05-1298 PJH (N.D. Cal. Aug. 13, 2008) (approving enhancement awards of $50,000 and $35,000 to employees in light of factors that included fear of workplace retaliation).

This result was reached after good-faith negotiation between the parties. The amount was valued as follows:  Based on information and evidence produced by Defendant during discovery, Plaintiff's Counsel determined that aggrieved employees worked a combined total of approximately 7,760 pay periods during the PAGA statute of limitations period ("PAGA Period"). Statutory penalties would be calculated according to Labor Code 2699(f)(2): If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

However, a number of courts have found that the "subsequent" penalty under PAGA applies only after a court or the Labor Commissioner determines that the employer has violated the Labor Code. *See Bernstein v. Virgin Am., Inc*., 990 F.3d 1157, 1173 (9th Cir. 2021) (reversing judgment as to "heightened civil penalties" because the defendant was not given notice by the Labor Commissioner when the "subsequent" violations occurred); *Vieyara-Flores v. Sika Corp.*, No. EDCV19606JVSKKX, 2019 WL 2436998, at *5 (C.D. Cal. June 10, 2019) ("employers are not subject to heightened penalties . . . until a court or commissioner notifies the employer that it is in violation of the Labor Code . . . [Plaintiff] has not offered evidence that the Labor Commission or a court has notified them of PAGA violations [thus] PAGA's heightened penalty of $200 for subsequent violations will not be calculated to determine the amount in controversy"); *Chen v. Morgan Stanley Smith Barney, LLC*, No. 8:14-CV-01077 ODW (FFMx), 2014 WL 4961182 (C.D. Cal., October 2, 2014) ("Under the Labor Code, if an employer does not have notice that they are committing a violation, they are not subject to the heightened penalties."); *Trang v. Turbine Engine Components Technologies Corp.*, No. CV 12–07658 DDP (RZx), 2012 WL 6618854 (C.D. Cal. Dec. 19, 2012) ("courts have held that employers are not subject to heightened penalties for subsequent violations unless and until a court or commissioner notifies the employer that it is in violation of the Labor Code"), citing *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th

1157 (2008). Under this line of cases, Defendant's exposure would be approximately

$776,000 = 7,760 violative pay periods × $100.

It should be noted that PAGA gives the Court wide latitude to reduce the amount of civil penalties "based on the facts and circumstances of a particular case" when "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(h). In reducing PAGA penalties, courts have considered issues including whether the employees suffered actual injury from the violations, whether the defendant was aware of the violations, and the employer's willingness to fix the violation. *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 528 (2018) (awarding PAGA penalties of only 0.2% of the maximum); *see also Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016); *Fleming v. Covidien Inc.*, No. ED CV 10-01487 RGK (OPX), 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011).

For example, during the penalty phase of trial in *Carrington*, the plaintiff requested PAGA penalties in the amount of approximately $70 million. The trial court instead awarded only $150,000—**or 0.21% of the maximum**—and stated that this reduction was warranted because imposing the maximum penalty would be "unjust, arbitrary, and oppressive" based on Starbucks's "good faith attempts" to comply with meal period obligations and because the court found the violations were minimal. *Carrington*, 30 Cal. App. 5th at 517. The Court of Appeal affirmed the lower court's reduced award of a $150,000 penalty under PAGA. *Id.* at 529. If a similar reduction had been applied here, Plaintiff would have recovered only approximately $1,630 ($776,000 × 0.0021 reduction).

Likewise, in *Covidien*, the Court reduced the potential penalties by over 82%, awarding $500,000 instead of maximum penalties of $2.8 million. *Covidien*, 2011 WL 7563047 at *4; *see also Thurman v. Bayshore Transit Mgmt.*, 203 Cal. App. 4th 1112, 1135-36 (2012) (affirming 30% reduction under specified PAGA claim where the employer produced evidence that it took its obligations seriously); *Elder v. Schwan Food Co.*, No. B223911, 2011 WL 1797254, at *5-*7 (Cal. Ct. App. May 12, 2011) (reversing

1   trial court decision denying any civil penalties where violations had been proven,

2   remanding for the trial court to exercise discretion to reduce, but not wholly deny, civil

3   penalties); *Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL

4   2236752, at *17 (N.D. Cal. June 15, 2012) (denying PAGA penalties for violation of

5   California Labor Code section 226 as redundant with recovery on a class basis pursuant

6   to California Labor Code section 226, directly); *Aguirre v. Genesis Logistics*, No. SACV

7   12-00687 JVS (ANx), 2013 WL 10936035 at *2-*3 (C.D. Cal. Dec. 30, 2013) (reducing

8   penalty for past PAGA violations from $1.8 million to $500,000, after rejecting

9   numerous other PAGA claims).

10          Plaintiff therefore determined an appropriate range of settlement for PAGA

11  penalties as a percentage of the settlement range that was consistent with other hybrid

12  class/PAGA settlements approved by California courts.[14] Where PAGA penalties are

13  negotiated in good faith and "there is no indication that [the] amount was the result of

14  self-interest at the expense of other Class Members," such amounts are generally

15  considered reasonable. *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL

---

17  [14] *Dearaujo v. Regis Corp.*, No. 2:14-cv-01408-KJM-AC, 2016 WL 3549473 at
18  *3 (E.D. Cal. June 29, 2016) (preliminarily approving $1.95 million settlement
    containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Garcia v. Gordon
    Trucking, Inc.*, No. 1:10–CV–0324 AWI SKO, 2012 WL 5364575 at *7 (E.D. Cal. Oct.
19  31, 2012) (approving $3.7 million settlement containing $10,000 PAGA penalties with
    $7,500 paid to LWDA); *Chu v. Wells Fargo Invst., LLC*, No. C 05–4526 MHP, 2011
20  WL 672645 at *1 (N.D. Cal Feb. 16, 2011) (approving $6.9 million settlement
    containing $10,000 PAGA penalties with $7,500 paid to LWDA); *Guerrero v. R.R.
21  Donnelley & Sons Co.*, Case No. RIC 10005196 (Riverside County Super. Ct. July 16,
    2013; Judge Matthew C. Perantoni) (gross settlement fund of $1,100,000, of which
22  $3,000 (or 0.3%) was allocated to the settlement of PAGA penalties); *Parra v. Aero Port
    Services, Inc.*, No. BC483451 (L.A. County Super. Ct. April 20, 2015; Judge Jane
23  Johnson) (gross settlement fund of approximately $1,458,900, of which $5,000 (or
    0.3%) was allocated to the settlement of PAGA penalties); *Thompson v. Smart & Final,
24  Inc.*, No. BC497198 (L.A. County Super. Ct. Nov. 18, 2014; Judge William F.
    Highberger) (gross settlement fund of $3,095,000, of which approximately $13,333 (or
25  0.4%) was allocated to the settlement of PAGA penalties); *Chavez v. Vallarta Food
    Enterprises, Inc.*, No. BC490630 (L.A. County Super. Ct. Nov. 10, 2014; Judge William
26  F. Highberger) (gross settlement fund of $1,545,900, of which $10,000 (or 0.6%) was
    allocated to the settlement of PAGA penalties); *Coleman v. Estes Express Lines, Inc.*,
27  No. BC429042 (L.A. County Super. Ct. Oct. 3, 2013; Judge Kenneth R. Freeman)
    (gross settlement fund of $1,535,000, of which $1,000 (or 0.1%) was allocated to the
28  settlement of PAGA penalties).

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

928133, at *9 (N.D. Cal. Apr. 3, 2009); *see*, *e.g.*, *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.").

## IV.    CONCLUSION

The Parties have negotiated a fair and reasonable settlement of claims. Having appropriately presented the materials and information necessary for preliminarily approval, the Parties request that the Court preliminarily approve the settlement.


Dated:  July 20, 2021                              Respectfully submitted,


                                                   By: /s/ Raul Perez
                                                   Raul Perez
                                                   Robert J. Drexler, Jr.
                                                   Molly Ann DeSario
                                                   Jonathan Lee
                                                   **CAPSTONE LAW APC**

                                                   Attorney for Plaintiff Ishmael Perez